UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TIMMY BRIDGEMAN                                                                           PLAINTIFF

v.                                                                  CIVIL ACTION NO. 3:16cv649-DPJ-FKB

TRACIR FINANCIAL SERVICES I,                                                              DEFENDANT
INC. f/k/a MISSISSIPPI CREDIT CORP.

ORDER

This employment-discrimination case is before the Court on Defendant's Motion to Dismiss [7]. For the reasons that follow, the motion is granted in part as to the Title VII claim related to the 2013 failure to promote but otherwise denied.

I.      Facts and Procedural History

Plaintiff Timmy Bridgeman, an African-American male, began his employment with Defendant Tracir Financial Services I, Inc., f/k/a Central Mississippi Credit Corp. ("CMCC") in September 2009. Bridgeman claims that, during his employment, he was subjected to a racially hostile work environment by CMCC owner Larry Halverson. Specifically, Bridgeman says Halverson told CMCC's African-American workforce that they would be punished for the company's poor performance, "and the punishment was that Mr. Halverson hung a 'black' monkey from the ceiling of their work space." Compl. [1] ¶ 7. Bridgeman also claims that Halverson "threatened to 'crack a whip' on his African-American employees" and that he often threw papers at Bridgeman "instead of handing them to him." *Id.* ¶¶ 8, 9. Additionally, Bridgeman alleges that he was passed over for a promotion twice, once in 2013 and once in 2015, because of his race and color. *Id.* ¶¶ 10, 11, 14.

Believing CMCC illegally discriminated against him, Bridgeman filed a charge of discrimination with the EEOC on May 14, 2015. Upon receipt of a right-to-sue letter,

Bridgeman filed this lawsuit on August 22, 2016.  He asserts failure-to-promote and hostile-work-environment race-discrimination claims against CMCC under Title VII and 42 U.S.C. § 1981.  CMCC answered [6] and moved to dismiss [7].  Bridgeman responded [10] to CMCC's motion, CMCC filed a rebuttal [12, 13], and the Court is now prepared to rule.

II.     Standard

Defendant made its motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  With respect to Rule 12(b)(1), CMCC contends that the Court lacks subject-matter jurisdiction over Bridgeman's untimely Title VII claims.  Def.'s Mem. [8] at 7.  But "the timely filing of a charge with the EEOC is not a jurisdictional prerequisite to a suit in federal court." *Liddell v. Northrop Grumman Shipbuilding, Inc.*, 836 F. Supp. 2d 443, 450 (S.D. Miss. 2011).  The Court therefore considers CMCC's motion solely under Rule 12(b)(6).[1]

As for Rule 12(b)(6), CMCC answered the Complaint before seeking dismissal, so technically it should have moved for judgment on the pleadings under Rule 12(c).  Regardless, the standard under either rule is the same.  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002).  Under that standard, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v.*

---

[1] The Fifth Circuit acknowledges a split of authority in the circuit as to whether exhaustion of administrative remedies is a condition precedent or a jurisdictional prerequisite to bringing a Title VII action.  *Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006).  But under the rule of orderliness, this Court has previously held that exhaustion is a condition precedent rather than a jurisdictional prerequisite based on earlier Fifth Circuit opinions.  *See Banks v. Hazlehurst City Sch.*, No. 3:15cv355-DPJ-FKB, 2016 WL 2654369, at *4 n.6 (S.D. Miss. May 4, 2016) (citing *King v. Life School*, 809 F. Supp. 2d 572, 577–78 (N.D. Tex. 2011); *Gates v. City of Dall., Tex.*, No. 3:96-CV-2198-D, 1997 WL 405144, at *1 n.1 (N.D. Tex. July 15, 1997) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970))).

*Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To overcome a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).

Finally, CMCC has moved for dismissal on the basis of an affirmative defense—the statute of limitations.  "[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994), *quoted in Wentzell v. JPMorgan Chase Bank, Nat'l Ass'n*, 627 F. App'x 314, 317 (5th Cir. 2015).  In particular, "a complaint may be subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling." *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011).

III.    Analysis

Bridgeman asserts two species of race-discrimination claims under Title VII and § 1981: failure-to-promote claims and hostile-work-environment claims.  The Court will address each in turn.[2]

---

[2] At the outset, CMCC argues that the Court should consider its motion unopposed because Bridgeman failed to comply with Local Rule 7(b)(4), which requires respondent to "file a response and memorandum brief in support of the response." L.U. Civ. R. 7(b)(4).  True

A.	Failure to Promote

Bridgeman says he was "passed over for the collections manager position in 2013" and again in 2015.  Compl. ¶¶ 10, 11.  CMCC asserts that the claim related to the non-promotion in 2013 is time-barred and that both promotion claims fail on the merits.

1.	2013

In order to pursue a claim under Title VII, a "claimant must file charges with the EEOC within 180 days after the alleged illegal conduct."  *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999).  And where a Title VII claim is based on "discrete discriminatory acts"—such as a failure to promote—"[t]he charge . . . must be filed within the 180-[]day time period after the discrete discriminatory act occurred."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 349 (5th Cir. 2010) (identifying "termination, failure to promote, denial of transfer, and refusal to hire" as "discrete acts").  In this case, Bridgeman filed his charge with the EEOC on May 14, 2015, making discrete acts that occurred prior to November 15, 2014, time-barred.  Because CMCC's failure to promote Bridgeman on some unspecified date in 2013 falls outside the statutory window, the Title VII claim based on the 2013 failure to promote is time-barred.

The analysis is different for Bridgeman's § 1981 claim related to the 2013 non-promotion.  To begin, the Court must determine whether the § 1981 claims are subject to a three- or four-year limitations period.  "The proper statute of limitations for a claim under [§ 1981] is determined by whether the claim would have been viable before certain 1991 congressional

---

enough, Bridgeman filed a skimpy two-page response that was largely unhelpful; he filed no supporting memorandum.  But even if Bridgeman had filed no response whatsoever, the Court could not grant CMCC's motion as unopposed.  *See* L.U. Civ. R. **Error! Main Document Only.**7(b)(3)(E) (dispositive motions may not be granted as unopposed).

enactments." *Fonteneaux v. Shell Oil Co.*, 289 F. App'x 695, 698 (5th Cir. 2008).  In particular, "a four-year statute of limitations applies 'if the plaintiff's claim against the defendant was made possible' by the 1991 or later [civil rights] statute." *Id.* (quoting *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)).  If the plaintiff's § 1981 claim was viable before the 1991 amendments to the statute, "the most analogous state statute of limitations" period—here, Mississippi's general three-year statute—applies.  *Id.*

Looking specifically at a failure-to-promote claim under § 1981, such a claim "would have been actionable without the 1991 statutory changes if 'the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer.'" *Id.* at 699 (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989), *superseded by statute on other grounds as stated in CBOCS W., Inc. v. Humphries*, 533 U.S. 442 (2008)).  But Bridgeman's Complaint lacks sufficient detail to determine whether the promotion in question would have "create[d] a new and distinct employment relationship" between Bridgeman and CMCC.  *Fonteneaux*, 289 F. App'x at 699.  So the Court cannot determine whether Bridgeman's § 1981 claim is subject to a three- or four-year statute of limitations.  Similarly, the Complaint fails to indicate when in 2013 Bridgeman was passed over for promotion.  If it occurred after August 22, 2013—three years before the filing date—then the § 1981 claim would survive under either limitations period.  Thus, the allegations of the Complaint do not "affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations." *Frame*, 657 F.3d at 240 (holding that because complaint left certain timing issues "open," dismissal was not appropriate).  The § 1981 claim based on the 2013 non-promotion survives the statute-of-limitations defense at this stage.

Turning to the merits, Bridgeman makes the following factual averments regarding the 2013 promotion decision:

> Plaintiff was passed over for the collections manager position in 2013. The position was offered to a white female whom Plaintiff supervised, but she declined. Instead, the position was given to a light-skinned African-American. Plaintiff was told that he was chosen because he was more senior than Plaintiff, which was not true.

Compl. [1] ¶ 10.

CMCC argues that these facts fail to satisfy the fourth prong of the *prima facie* case—"that the position was filled by someone outside the protected class." Def.'s Mem. [8] at 9. CMCC then cites two Fifth Circuit *wrongful-termination* cases where dismissal was affirmed because the plaintiff was replaced by someone within his or her protected class. *See id.* at 10 (citing *Singh v. Shoney's, Inc.*, 64 F.3d 217, 219 (5th Cir. 1995); *Allison v. Gulf Emps. Credit Union*, No. 93-5254, 1994 WL 442349 (5th Cir. July 25, 1994)).

As an initial point, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). In *Swierkiewicz v. Sorema N. A.,* the United States Supreme Court explained that because "the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." 534 U.S. 506, 512 (2002). Indeed, the Rule 12(b)(6) "standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citation and quotation marks omitted). That said, "[a]llegations related to that prima facie inquiry may nonetheless be helpful in satisfying the general *Iqbal* plausibility standard." *Haskett v. Cont'l Land Res., L.L.C.*, No. 15-40595, 2016 WL 4446075, at *1 (5th Cir. Aug. 23, 2016).

As for Bridgeman's claim, CMCC is at least partially correct that the Fifth Circuit often states the prima facie case as requiring proof that the position was given to someone outside the plaintiff's protected class. *See, e.g.*, *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). But the prima facie test is a flexible standard. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973) (noting that "facts necessar[]y [to state a prima facie case] will vary in Title VII cases" depending on the circumstances); *see also Harris v. State Farm Fire & Cas. Co.*, 178 F. Supp. 2d 680, 694 (W.D. La. 2001) ("The prima facie case is a flexible standard that may be modified to relate to different factual situations." (internal quotation marks and citation omitted)). And in the failure-to-promote context, the Fifth Circuit has articulated an alternative test at the fourth prong, requiring proof that "the employer hired a person outside of the plaintiff's protected class or continued to seek applicants with the plaintiff's qualifications." *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015) (citing *Williams-Boldware v. Denton Cty., Tex.*, 741 F.3d 635, 643 (5th Cir. 2014), *cert. denied*, ––– U.S. ––––, 135 S. Ct. 106 (2014) (applying prima facie case to § 1981 claim)); *see also Caldwell v. Univ. of Hous. Sys.*, 520 F. App'x 289, 294 (5th Cir. 2013) (citing *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004)).

When Bridgeman's averments are viewed in a light most favorable to him, they suggest that CMCC continued searching for similarly qualified applicants and then falsely claimed that the prevailing candidate had more seniority than Bridgeman. *See* Compl. [1] ¶ 10. These facts suggest that discovery might yield sufficient evidence to support the fourth prong of the prima facie test. *See In re S. Scrap Material Co., LLC*, 541 F.3d at 587.

Finally, Bridgeman contends in his Complaint that CMCC discriminated against him based on "the color of his skin" by giving the position to a less-senior light-skinned African

American.  Compl. [1] ¶ 14.[3]  Neither party addresses whether § 1981 prohibits discrimination based on "color," but there is some indication that it might.  *Cf. St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (explaining that § 1981 "protect[s] from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics . . . whether or not [such discrimination] would be classified as racial in terms of modern scientific theory").  At this stage, the Court is reluctant to say whether the "color" claim is cognizable under § 1981 without first hearing from the parties.  Nevertheless, there is enough at this point to say the claim is plausible.  And for these reasons, the motion is denied as to the § 1981 claim related to the 2013 promotion decision.

      2.    2015

The 2015 non-promotion occurred within the relevant statutes of limitations under both Title VII and § 1981.  But as with the claim relating to the 2013 non-promotion, CMCC argues that the 2015 claim is subject to dismissal because Bridgeman cannot establish that the promotion was given to someone outside his protected class.  Again, though, the Complaint suggests that CMCC first offered the position to white candidates before offering it to another African American with Bridgeman's qualifications.  *See* Compl. [1] ¶¶ 11–12; *see also McMullin*, 782 F.3d at 258 (describing alternative fourth prong).  Those facts are "enough . . . to raise a reasonable expectation that discovery will reveal evidence of the necessary . . . elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (internal quotation marks and citation

---

[3] Contrary to CMCC's argument, descriptions in the Complaint like the color of the successful candidate are not mere conclusions, they are statements of fact.  That said, Bridgeman also states that CMCC's owner "does not care for black employees but he does favor light skinned blacks over dark skinned blacks like Plaintiff."  Compl. [1] ¶ 14.  That conclusory statement is not considered under the Rule 12(b)(6) analysis.  *See Twombly*, 550 U.S. at 555.

omitted). The failure-to-promote claims related to the 2015 non-promotion survive CMCC's motion to dismiss.[4]

B.      Hostile Work Environment

Bridgeman asserts that Halverson subjected him to a racially hostile work environment. In support of his hostile-work-environment claims, Bridgeman recounts three particular incidents (1) hanging a black monkey in the work area; (2) threating to "crack a whip"; and (3) Halverson's habit of "throwing papers at [Bridgeman] . . . instead of handing them to him." Compl. [1] ¶¶ 7–9. CMCC argues that because Bridgeman

> makes absolutely no allegations regarding when any of these three events allegedly took place . . . there is absolutely no basis for the Court to determine that these events fall within the 180 day limitations period provided for in Title VII or the [four]-year statute of limitations period applied to section 1981 claims.

Def.'s Mem. [8] at 11–12.[5]

"Because a hostile work environment generally consists of multiple acts over a period of time," a plaintiff asserting a Title VII hostile-work-environment claim must file an EEOC charge "within [180] days of any action that contributed to the hostile work environment." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 398 (5th Cir. 2007). So long as one act that was a part of the hostile work environment occurred within 180 days of the filing of the plaintiff's charge "the

---

[4] As noted above, the Court is obligated to consider the merits even when the non-movant essentially defaults on a dispositive motion. And here, the Court acknowledges that neither party discussed the alternative articulation of the fourth prong of the prima facie case—Bridgeman failed to address either test. Moreover, neither party addressed the "color" claim as to the 2013 decision. Given the status of the briefing, the Court concludes that this ruling does not constitute the law of the case, and CMCC is not precluded from revisiting these issues at the summary-judgment stage.

[5] CMCC asserted that a three-year statute of limitations would apply to the § 1981 claims, but "hostile work environment . . . claims 'ar[ose] under' the amendment to § 1981 contained in the 1991 Act" and are therefore subject to the federal four-year statute of limitations. *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 383 (2004).

9

court may consider all of the acts that are alleged to have contributed to the hostile work environment, even though some of them may have taken place outside of the [180-]day filing period." *Id.*

Here, the Complaint does not state when any of the alleged acts of harassment occurred, though it does state that the "'black' monkey . . . *has been* hanging there for a year." Compl. [1] ¶ 7 (emphasis added). Viewed in a light most favorable to Bridgeman, this averment suggests that the monkey was still hanging when the Complaint was filed, making the claims timely. Regardless, the Court cannot conclude based on the pleadings that Bridgeman's "allegations affirmatively demonstrate that [his] claims are barred by the statute of limitations and fail to raise some basis for tolling." *Frame*, 657 F.3d at 240.

Finally, CMCC argues that Bridgeman has not pleaded all the elements of his hostile-work-environment claims. Def.'s Mem. [8] at 16–17. But as noted before, Bridgeman is not required to plead all of the elements. *See Raj*, 714 F.3d at 331. Regardless, the Court concludes that Bridgeman has offered plausible claims despite CMCC's arguments. For example, CMCC contends that the incidents Bridgeman relies upon to support the hostile-work-environment claims do not reflect a "racial motive." Def.'s Mem. [8] at 12; *see also id.* at 13. But that argument invites the Court to weigh the averments. Under Rule 12(b)(6), the Court must view the pleaded facts in a light most favorable to Bridgeman, and in that light, the nature of the incidents themselves plausibly imply a racial motive. Moreover, to the extent Bridgeman asserts incidents that are not overtly race-based, those incidents may still be considered as part of a hostile-work-environment claim. *See WC&M Enters., Inc.*, 496 F.3d at 400–01.

Similarly, CMCC argues that Bridgeman has not shown that the actions were severe or pervasive. Def.'s Mem. [8] at 17. "In determining whether an environment is 'hostile' or

'abusive' within the meaning of Title VII, courts look at the totality of the circumstances including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  Here, there is at least an allegation that some of the alleged harassment was ongoing for a year, suggesting pervasiveness.  *See* Compl. [1] ¶ 7.

The Court need not say at this point whether this is alone sufficient.  It remains to be seen after discovery whether, considering the totality of the circumstances, Bridgeman can ultimately meet his burden to establish all of the elements of his hostile-work-environment claims.  But at the pleading stage, Bridgeman passes the plausibility test.  *See Raj*, 714 F.3d at 331 ("[A] plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim.").  The motion to dismiss is denied as to the hostile-work-environment claims.

IV.     Conclusion

The Court has considered all arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Defendant's Motion to Dismiss [7] is granted in part.  The Title VII claim related to the 2013 failure-to-promote is dismissed with prejudice as time-barred.  The motion is otherwise denied.

**SO ORDERED AND ADJUDGED** this the 28th day of November, 2016.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE